[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT
Before the court is a motion for summary judgment as to each count of the plaintiff's, Mario Olivas, revised complaint, dated April 10, 2001. The defendant is DeVivo Industries, Inc. The plaintiff alleges that the defendant's agents falsely accused him of stealing and cashing the paycheck of his brother, Wilf redo Flores, who also was an employee of the defendant. He also seeks damages for intentional and negligent infliction of emotional distress. Because the plaintiff's evidence reveals the existence of a question of material fact, the motion must be denied.
The defendant filed the motion for summary judgment on June 29, 2001. Accompanying the defendant's motion is a memorandum of law in support of the motion, and the following five exhibits: (A) affidavit of Tonino Rosati, vice president of operations of the defendant; (B) affidavit of Mariano Tucciarone, vice president of manufacturing of the defendant; (C) affidavit of Jaime Franco, supervisor of the preparation department of the defendant; (D) affidavit of Mario DeVivo, President of the defendant; and (E) certified copy of the "Complaint/Statement" Gene Scaperotta filled out for the Trumbull police department. Gene and Alexandria Scaperotta own the store where the missing check was cashed.
The plaintiff filed a memorandum opposing the motion for summary judgment on July 13, 2001, accompanied by: (1) an unsigned affidavit of the plaintiff; (2) affidavit of the plaintiff's former attorney, Carmen Castro; (3) three uncertified photocopies of the Trumbull police department records concerning the incidents surrounding the check; and (4) a photocopied partial phone bill.
Before turning to the merits of the motion, the court must first address several procedural issues. Practice Book § 17-45 sets forth the procedure on a motion for summary judgment. Section 17-45 provides that a party opposing summary judgment "shall at least five days before CT Page 9514 the date the motion is to be considered on the short calendar file opposing affidavits and other available documentary evidence." The plaintiff failed to comply with this rule in two regards. One, he filed his materials objecting to the motion three days before short calendar, and two, he filed a sworn affidavit on his own behalf on July 23, 2001, seven days after short calendar. Taking the latter first, this matter was resolved during oral argument at short calendar when the plaintiff abandoned a request for a "continuance" that would have allowed him to file additional evidence. Accordingly, the court will not consider the affidavit the plaintiff filed on July 23, 2001. As for the untimely materials in opposition that the plaintiff filed prior to the short calendar hearing, the defendant did not object to consideration of these materials. The court waives the plaintiff's noncompliance with Practice Book § 17-45.Pepe v. New Britain, 203 Conn. 281, 287-88, 524 A.2d 692
(1987). Thus, the court will consider the plaintiff's memorandum in opposition to the motion for summary judgment and any appropriate evidence included with it.
"Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." Great Country Bank v. Pastore,241 Conn. 423, 436, 696 A.2d 1254 (1997). As previously stated, the plaintiff filed an unsigned, unsworn affidavit on his own behalf, a sworn affidavit of Carmen Castro, the plaintiff's former attorney who also served as his translator, and several items of uncertified documentary evidence. The plaintiff's unsigned affidavit is not an affidavit at all, and will not be considered by the court. Fogerty v. Rashaw, 193 Conn. 442,444, 476 A.2d 582 (1984). Likewise, "[u]ncertified copies of documents to which no affidavit exists attesting to their authenticity . . . do not constitute proof of documentary evidence for purposes of a motion for summary judgment." (Internal quotation marks omitted.) Lake v. Whelan, Superior Court, judicial district of Danbury, Docket No. 337163 (January 29, 2001, Moraghan, J.). Accordingly, the court will not consider the uncertified documents. Castro's affidavit is the only admissible piece of evidence the plaintiff has submitted in opposition to the motion for summary judgment.
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Practice Book § 17-49. "In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party seeking summary judgment has the burden of showing the absence of any genuine issue [of] material facts which, under applicable principles of substantive law, entitle him to a judgment as a matter of law . . . and the party opposing such a motion must provide an evidentiary foundation CT Page 9515 to demonstrate the existence of a genuine issue of material fact." (Citations omitted.) Appleton v. Board of Education, 254 Conn. 205, 209,757 A.2d 1059 (2000). "The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent." (Internal quotation marks omitted.) Witt v.St. Vincent's Medical Center, 252 Conn. 363, 373 n. 7, 746 A.2d 753
(2000). "Although the moving party has the burden of presenting evidence that shows the absence of any genuine issue of material fact, the opposing party must substantiate its adverse claim with evidence disclosing the existence of such an issue." Beers v. Bayliner MarineCorp., 236 Conn. 769, 771 n. 4, 675 A.2d 829 (1996). "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." (Internal quotation marks omitted.) Hammerv. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578, 573 A.2d 699
(1990).
The gravamen of the plaintiff's complaint is that some of the defendant's employees told other employees that the plaintiff was accused of stealing and cashing the missing check. The defendant denies that any of its employees made a defamatory statement about the plaintiff, or caused him emotional distress as a result. Specifically, the defendant makes four arguments in support of its motion for summary judgment. First, the defendant argues that no question of material fact exists to support the plaintiff's slander claim. Second, the defendant argues that the alleged statements do not constitute slander per se. Third, the defendant argues that the alleged statements were privileged. Fourth, the defendant argues that counts two and three of the plaintiff's complaint sounding in negligent and intentional infliction of emotional distress are derivative of the slander claim and must fail if count one fails. Because the plaintiff alleges that the defendant's employees slandered him on many different occasions, the court will address each instance in light of the defendant's arguments.
Taking the plaintiff's allegations of slander in order, the plaintiff first claims that Rosati, the employee who brought photocopied pictures of employees to the Scaperotta's store, made the following statements to the Scaperottas upon "showing them the Plaintiff's unclear identification"; "`this is the brother of the missing check's owner,' that Plaintiff, on the day the check was stolen, had asked for his brother's check, and that Plaintiff had [punched] out and left work at lunch time that day." Rosati testified, however, that he merely told the Scaperottas that the person they identified is the brother of the person to whom the check was made out to. Rosati testified that he "did not CT Page 9516 confirm their identification or say anything to the Scaperottas derogatory about Mr. Olivas; in fact, I declined to even give them Mr. Olivas' name." Id.
Testing this set of facts against the defendant's first argument, i.e., that no material fact exists, the court concludes that the defendant has failed to meet its burden of proof. Bearing in mind the strict standard to which the court holds a moving party on a motion for summary judgment, the court concludes that Rosati's testimony does not make clear to the court what transpired when Rosati met with the Scaperottas. Rosati testified that he did not identify the plaintiff for the Scaperottas, and that he declined to even provide them with the plaintiff's name. This would indicate that the Scaperottas did not already know the plaintiff, and that his name did not appear on the photograph. This raises the question of how Gene Scaperotta was able to identify the plaintiff in the summons/complaint he filled out on June 18, 1998. (Defendant's exhibit E.) The court concludes that the defendant has failed to meet its burden of establishing that no question of material fact remains as to what Rosati told the Scaperottas.
The plaintiff filed no acceptable evidence regarding what took place during Rosati's meeting with the Scaperottas either. Because of this failure, and because the court concludes that a question of fact exists as to another set of allegations in count one, the court declines at this time to address the defendant's arguments that the alleged statements are not slanderous per se and that they are subject to a privilege defense.
The plaintiff's next allegation of slander alleges that another of the defendant's employees, Tucciarone, told Flores "your brother is a thief." In his affidavit, Tucciarone denies that he made such a statement. There is no affidavit of Flores in the record. Castro in her affidavit, makes the following assertion: "on Thursday. June 4, 1998, the Plaintiff had to show up at work at the request of the Defendant, to confront the accusations made by the Defendant that the Plaintiff `had cashed the check . . . that he was a thief.' Wilfredo Flores told me this prior to getting to DeVivo's." (Ellipses in original.) Castro's testimony regarding Flores's statement is inadmissible hearsay. "Hearsay is an out of court statement offered for the truth of the matter asserted therein."Rogers v. Board of Education, 252 Conn. 753, 767, 749 A.2d 1173 (2000). If Flores were the declarant, however, the statement would have been a verbal act, which is nonhearsay. C. Tait, Connecticut Evidence (3d Ed. 2001) § 8.8, p. 575. Accordingly, the defendant has met its burden as to the allegation that Tucciarone told Flores "your brother is a thief," by submitting proof that he did not make said statement, and the plaintiff has not met his burden of providing admissible evidence to dispute the defendant's proof. CT Page 9517
The next set of circumstances that the plaintiff alleges to be slanderous took place when the plaintiff and his attorney met with Rosati and Tucciarone at the defendant's offices. In her affidavit, Castro testified that during this meeting Tucciarone stated, in Spanish, that he knew the plaintiff "had done it. . . ." This statement presents a question of material fact.
At the outset, the court notes that the defendant does not address this evidence specifically. Nevertheless, the court will test this statement against each of the defendant's general arguments. First, the court concludes that this statement is admissible nonhearsay, because it is not being offered for the truth of the matter asserted, but rather to support the allegation that the statement was made. C. Tait, Connecticut Evidence (3rd Ed. 2001) § 8.8, p. 575.
The court also concludes that this statement is slanderous per se. The statement that Tucciarone knew the plaintiff "had done it," in the context of a conversation between the parties about who stole and cashed the check, is tantamount to accusing the plaintiff of theft. There is no innuendo. Moreover, calling a plaintiff a thief is slander per se. Milesv. Perry, 11 Conn. App. 584, 602, 529 A.2d 199 (1987) ("[s]tatements accusing a plaintiff of theft are libelous or slanderous per se.")
The defendant argues that the statements made during this conversation between Rosati, Tucciarone, Castro and the plaintiff are privileged. A privileged statement can be absolute or conditional. "The effect of an absolute privilege in a defamation action is that damages cannot be recovered for a defamatory statement even if it is published falsely and maliciously." Kelley v. Bonney, 221 Conn. 549, 565, 606 A.2d 693 (1992). A conditional privilege, on the other hand, requires a factual inquiry into the context, scope and nature of the statement. Miles v, Perry, supra, 11 Conn. App. 595. "Whether the occasion is one of privilege is a question of law." Torosyan v. Boeringer Ingelheim Pharmaceuticals, Inc.,234 Conn. 1, 28, 662 A.2d 89 (1995).
The defendant first argues that any statements made during this meeting are subject to an absolute privilege because the plaintiff's demand for reiteration served as an invitation to make the statement. The defendant cites no case, and the court is aware of no case, holding that an absolute privilege arises when a plaintiff demands reiteration. A component of the defendant's argument, however, is that invitation is a complete defense to an allegation of slander. See 3 Restatement (Second), Torts, § 583, (1977). Section 583 states: "Except as stated in § 584, the consent of another to the publication of defamatory matter concerning him is a complete defense to his action for CT Page 9518 defamation." Section 584 states: "An honest inquiry or investigation by the person defamed to ascertain the existence, source, content or meaning of a defamatory publication is not a defense to an action for its republication by the defamer." Unlike a defense of absolute privilege, which would preclude the plaintiff's claims as to this meeting as a matter of law, the defendant's consent defense presents at least two unresolved issues of fact. First, because the plaintiff alleges, and Castro testifies that the plaintiff was told to report to work to answer the allegations against him, a question of fact remains as to whether the plaintiff invited this statement or not. Second, if the plaintiff and Castro were not compelled to attend this meeting, a question of fact exists as to whether the plaintiff was conducting an honest investigation as contemplated by § 584 of the Restatement (Second), Torts.
Likewise, establishing a conditional privilege defense necessarily invokes questions of fact. The defendant "must sufficiently prove five prerequisites in order to establish the defense of [conditional privilege]. The essential elements are (1) an interest to be upheld, (2) a statement limited in its scope to this purpose, (3) good faith, (4) a proper occasion, and (5) a publication in a proper manner to proper parties only." Miles v, Perry, supra, 11 Conn. App. 595. A conditional privilege does not exists "where the defamatory remarks are activated by malice, improper motive, or lack of good faith in making the statement." Id. It is not necessary to recognize the existence of a conditional privilege at this time because doing so will not resolve a question of fact, which is the courts sole function in ruling on a summary judgment motion. The court concludes that a question of material fact exists as to whether Tucciarone defamed the plaintiff.
The remainder of the plaintiff's slander allegations are each denied by the employees who allegedly made each statement, and the plaintiff has filed no acceptable evidence that refutes their testimony. Nevertheless, an issue of fact remains and the motion must be denied.
 CONCLUSION
Because a question of material fact exists as to whether Tucciarone defamed the plaintiff, the motion for summary judgment is denied as to count one of the plaintiff's complaint. Additionally, because the defendant's motion for summary judgment as to counts two and three is wholly dependent on the granting of the motion as to count one, the motion for summary judgment is denied for these counts as well.
HOLDEN, J. CT Page 9519